**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
MIGDALIA AVEDANA, *individually and on*
*behalf of others similarly situated*,

                                             Plaintiff,

                        - against -

CASA OFELIA'S BAKERY LLC, CASA
OFELIA'S CORP. *d/b/a* CASA OFELIA BAKERY,
MARTIN ROJAS, and SUSSY GRICELDA
AGURCIA,

                                             Defendants.
-------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 20-2214 (DG) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>P**RELIMINARY** S**TATEMENT**</u>

Plaintiff Migdalia Avedana ("Plaintiff") commenced this action against Defendants Casa

Ofelia's Bakery LLC, Casa Ofelia's Corp., Martin Rojas, and Sussy Gricelda Agurcia

("Defendants") pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law

("NYLL"). *See generally* Complaint ("Compl.") [DE 1]. Plaintiff alleges she was not paid

overtime compensation and that the Defendants failed to provide her with a notice concerning

her rate of pay at the time she was hired as well as wage statements throughout her employment.

*See generally id.* After Defendants failed to answer the Complaint, the Clerk of Court noted

their default in the record. *See* Entry of Default [DE 12]. Plaintiff then filed the instant motion

for entry of a default judgment. *See* Notice of Motion for Default Judgment ("Notice of Mot.")

[DE 13].

Judge Gujarati referred Plaintiff's motion to this Court for a Report and

Recommendation. *See* February 3, 2021 Electronic Order. Based upon the information

submitted by Plaintiff and for the reasons set forth below, the Court respectfully recommends to

Judge Gujarati that Plaintiff's motion be GRANTED to the extent set forth in this Report and Recommendation.

## II.   BACKGROUND

### A.   Factual Background

The following facts are taken from the Complaint and are assumed to be true for purposes of this motion.[1]  The Corporate Defendants, Casa Ofelia's Bakery LLC and Casa Ofelia's Bakery Inc., are organized under the laws of the State of New York and maintain their principal places of business at 1293a Grand Avenue, Baldwin, New York 11510.  *See* Compl. ¶¶ 11-12. The Individual Defendants, Martin Rojas and Sussy Agurcia, served as Chairpersons and/or CEOs of the Corporate Defendants.  They exercised control over and have an ownership interest in those entities.  *Id.* ¶¶ 13, 16.  Collectively, the Defendants own, operate, or control Casa Ofelia Bakery (the "Bakery") which is located at the same Baldwin, New York address.  *Id.* ¶ 11.  Rojas and Agurcia also serve as managers, principals, or agents of the Bakery.  *Id.* ¶ 2.  They determine employee compensation and work schedules, maintain employee records, and have the authority to hire and fire employees.  *Id.* ¶ 13.  The Defendants are associated and joint employers because they (1) act in the interest of each other with respect to employees, (2) pay employees by the same method, and (3) share control over the employees.  *Id.* ¶ 18.

Plaintiff began working for the Defendants on June 25, 2018.  *Id.* ¶ 27.  She took a two-month hiatus in March and April 2019 and her employment concluded on May 16, 2020.  *Id.*

---

[1]      Plaintiff commenced this action on behalf of herself and all others similarly situated.  The Complaint sets forth a proposed FLSA collective of "all similarly situated persons . . . who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the [C]omplaint."  *Id.* ¶ 38.  However, the Plaintiff abandoned these claims in her motion for default judgment and the case has proceeded as a single plaintiff FLSA action.

She performed a variety of duties around the Bakery which included cooking, cleaning, waiting tables, and filling in as a cashier when needed.  *Id.* ¶ 25.  Plaintiff's hours varied greatly and she had to punch in and out daily.  *Id.* ¶ 28.  According to the Complaint, Plaintiff worked 9 to 12 hours per day, 6 or 7 days each week.  *Id.*  In total, Plaintiff worked between 54 and 72 hours per week.  *Id.*  When she was hired in 2018, Plaintiff's hourly rate of pay was $11.  *Id.*  Her pay was increased to $12/hour in 2019 and to $13/hour in 2020; however, "[s]ometimes Plaintiff worked for free as Defendants claimed not to have enough business."  *Id.* (internal quotation marks omitted).  As such, Plaintiff worked in excess of 40 hours each week and was not paid appropriate overtime compensation throughout the duration of her employment.  *Id.* ¶ 31.  She was also not given any meal break periods.  *Id.* ¶ 37(f).  Defendants never provided Plaintiff with any written notice, documentation, or statements that set forth her "actual hours worked" or her rate of pay.  *Id.* ¶¶ 32, 35.  Nor was Plaintiff provided with written notice of her employer's regular payday or a statement of wages each time she was paid.  *Id.* ¶¶ 34-35.  Plaintiff alleges the Defendants willfully disregarded and purposefully evaded recordkeeping requirements to disguise the actual number of hours she worked to avoid properly paying her overtime compensation.  *Id.* ¶ 37.

Plaintiff asserts four causes of action against the Defendants:  (1) violation of the FLSA's overtime provision; (2) violation of the NYLL's overtime provision; (3) failure to provide notice at the time of hiring containing Plaintiff's rate of pay and pay day, among other information, as required by NYLL § 185(1); and (4) failure to provide wage statements in accordance with NYLL § 198(1-d).  *Id.* ¶¶ 44-56.

**B.      Procedural Background**

The Complaint was filed on May 16, 2020.  *See generally id.*  Two days later on May 18, 2020, summonses were issued to each of the Defendants.  *See* DE 6.  The Corporate Defendants were served through the New York Secretary of State on June 25, 2020.  *See* DE 7; DE 8.  An agent for the Individual Defendants was served on July 15, 2020.  *See* DE 9; DE 10.  The Corporate Defendants and Individual Defendants' deadlines to respond to the Complaint were July 16, 2020 and August 5, 2020 respectively.  When the four Defendants failed to respond or otherwise move with respect to the Complaint, Plaintiff sought certificates of default from the Clerk of the Court.   *See* DE 11.  The Clerk of the Court noted the defaults in the record on October 14, 2020.  *See* Entry of Default [DE 12].

On January 25, 2021, Plaintiff moved for entry of default judgment.  *See* Not. of Mot.  In support of her motion, Plaintiff submitted a memorandum of law, a declaration by Plaintiff's counsel, Lina Stillman, Esq., a spreadsheet setting forth the claimed damages, Attorney Stillman's billing records, and an affidavit from the Plaintiff stating that the Individual Defendants are not in the military.  *See* Memorandum of Law in Support of Plaintiff's Application for Default Judgment ("Pl.'s Mem.") [DE 13-1]; Declaration of Lina Stillman, Esq. ("Stillman Decl.") [DE 14]; Damages Spreadsheet [DE 14-6]; Billing Records [DE 14-7]; Affidavit of Military Investigation [DE 15].  After reviewing the Plaintiff's motion papers, the Court determined that a hearing was necessary since, among other things, Plaintiff did not submit an affidavit stating the actual hours she worked.  *See* DE 17.  The Court directed Attorney Stillman to ensure that her client appeared for the hearing and was prepared to testify as to her damages.  *Id.*

The Evidentiary Hearing was conducted on June 22, 2021 via Cisco Webex. *See* Minute Entry [DE 19]. Because the hearing was scheduled to address the damages issue, the Court is deferring its discussion of the hearing and its findings to the damages section of this Report and Recommendation. *See* Section IV.B.1a.

## III.   STANDARD OF REVIEW

Fed. R. Civ. P. 55 establishes a two-step process for obtaining a judgment against a defaulting party. *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). First, a plaintiff must obtain a notation of default indicating that a party has "failed to plead or otherwise defend." Fed. R. Civ. 55(a). Second, upon obtaining a notation of default, "a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d at 104. The decision to grant a motion for default judgment is left to the sound discretion of the district court. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 88 (2d Cir. 2009)) ("Rule 55(b) commits this decision to the sound discretion of the district court.").

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 13-2451, 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y.1992)); *Krevat v. Burgers to Go, Inc.*, No. 13-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-1878, 2007 WL 2891016, at *2

(E.D.N.Y. Sept. 28, 2007)) ("A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability.  *See Deckers Outdoor Corp. v. TKM Forest Hills, LLC*, No. 12-5986, 2014 WL 4536715, at *4 (E.D.N.Y. Sept. 11, 2014) (citing *Greyhound ExhibitGroup. Inc*., 973 F.2d at 158).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-4358, 2014 WL 2169769, at *3 (E.D.N.Y. May 23, 2014) (quoting *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc*., No. 08-3168, 2009 WL 4929419, at *6 (E.D.N.Y. Oct. 6, 2009)) (internal quotation marks omitted), *report and recommendation adopted by* 2014 WL 2765793 (E.D.N.Y. Jun. 18, 2014)); *Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).  Rather, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); *see Said v. SBS Elecs., Inc.*, No. 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (The fact that a complaint remains unanswered will not suffice to establish liability on the plaintiff's claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading."), *adopted as modified on unrelated grounds*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010 ).

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default."

*Krevat*, 2014 WL 4638844, at *5 (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001); *Enron Oil Corp.*, 10 F.3d at 96). "These factors are: (1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Id.* (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc.*, No. 12-6317, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted by* 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013)); *see, e.g.*, *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-02067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (citing *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007); *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006)). With this framework in hand, the Court now turns to the substantive issues regarding the Defendants' default in this case.

## IV.   DISCUSSION

### A.   Factors Relevant to Default Judgment

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default." *Krevat*, 2014 WL 4638844, at *5 (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001); *Enron Oil Corp.*, 10 F.3d at 96). "These factors are: (1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Id.* (quoting *Tr. of Empire State Carpenters Annuity,*

*Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted by* 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013)); *see, e.g.*, *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-CV-02067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); then citing *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007)); *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006).

### 1.   *Willfulness*

"When a defendant is continually and 'entirely unresponsive,' defendant's failure to respond is considered willful." *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-0346, 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019) (quoting *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. JREM Constr. Corp.*, No. 12-CV-3877, 2013 WL 618738 at *3 (E.D.N.Y. Jan. 28, 2013)) (internal quotation marks omitted).

Here, service of the summons and Complaint was made upon the Corporate Defendants on June 25, 2020.  *See* DE 7; DE 8.  The Individual Defendants were served on July 15, 2020. *See* DE 9; DE 10.  None of the Defendants filed an answer or otherwise responded to the Complaint.  Plaintiff served the Defendants with copies of the instant motion for default judgment and accompanying exhibits on January 25, 2021 and the Defendants failed to file any opposition to the motion.  *See* DE 16.  Plaintiff also served Defendants with a copy of the Court's Order scheduling the June 22, 2021 evidentiary hearing, and neither the Individual

Defendants nor any representatives for the Corporate Defendants appeared for the hearing. *See* DE18.  As such, the Court finds the Defendants' default in this case to be willful.

### 2.  *Prejudice*

The Court next considers whether the non-defaulting party would be prejudiced if the motion for entry of default judgment were to be denied.  "Denying the motion for default judgment motion would be prejudicial to Plaintiff 'as there are no additional steps available to secure relief in this Court.'"  *Acosta*, 2019 WL 1590931, at *8 (citing *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at * 2 (S.D.N.Y. Oct. 27, 2008)).  Here, if a default judgment is not entered, Plaintiff will have no alternative legal redress to recover the damages sought.  The Court therefore finds that the prejudice factor has been satisfied.

### 3.  *Meritorious Defense*

The final factor the Court considers is whether Defendants have a meritorious defense.  A defense will be considered meritorious when it is "good at law" and gives the factfinder a determination to make.  *Acosta*, 2019 WL 1590931, at *8 (citing *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)).  A meritorious defense requires a presentation of facts which, if proven during trial, would establish a complete defense.  *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998).  When the defendant fails to answer the complaint, the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances.  *Acosta*, 2019 WL 1590931, at *8; *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-0046, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012).  Here, Defendants failed to provide an answer to the Complaint.  Under these circumstances, granting a default judgment is favored and the facts set forth within the

Complaint are deemed admitted.  *Acosta*, 2019 WL 1590931, at *8.  Nevertheless, Plaintiff's

allegations do not necessarily demonstrate the validity of her claims.  Plaintiff must show that

these unanswered allegations establish Defendants' liability for each claim.  *Id.* (citing *Said v.

SBS Elecs., Inc.*, No. 08-CV-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010)).

Plaintiff alleges Defendants violated (1) the overtime provisions of FLSA, (2) the

overtime provisions of NYLL, (3) the notice at time of hiring provision of NYLL, and (4) the

provision to furnish accurate wage statements under the NYLL.  *See* Compl. ¶¶ 44-56.[2]  Plaintiff

asserts that Defendants' violations of the FLSA and NYLL were willful.  *See id.* ¶¶ 45, 49.

Plaintiff's first claim is that Defendants violated the overtime provision of the FLSA

which states that "no employer shall employ any of his employees . . . for a workweek longer

than forty hours unless such employee receives compensation for his employment in excess of

the hours above specified at a rate not less than one and one-half times the regular rate at which

he is employed."  *See* 29 U.S.C. § 207(a)(1).  Plaintiff alleges that Defendants failed to pay her

"overtime compensation at rates of one and one-half times the regular rate of pay for each hour

worked in excess of forty hours in a workweek."  *See id.* ¶ 44.  She specifically alleges that she

worked anywhere from nine to twelve hours per day on six to seven days each week, which is 54

to 72 hours per week.  *See id.* ¶ 28.  Plaintiff alleges she was paid a standard rate of $11 per hour

in 2018, $12 per hour in 2019, and $13 per hour in 2020.  *See id.*  Additionally, Plaintiff alleges

that she sometimes worked without pay when Defendants claimed not to have "enough

business."  *See id.*  These same allegations likewise pertain to Plaintiff's second claim for

Defendants' violation of the NYLL's overtime provision.  *See Candelario-Salazar v. Kings II*

---

[2]    The Court points out that this information is taken from the Complaint and the Court
accepts these allegations as true for purposes of the default.

*Deli & Grocery, Inc.*, No. 20-CV-760, 2020 WL 8413558, at \*5 (E.D.N.Y. Dec. 28, 2020) ("The
NYLL incorporates and restates the FLSA's requirements, and so the analysis of overtime claims
under the NYLL is generally the same as under the FLSA."), *report and recommendation
adopted*, 2021 WL 129062 (E.D.N.Y. Jan. 14, 2021).

As to Plaintiff's third and fourth claims, the NYLL requires an employer to furnish each
employee with a notice and acknowledgement of his or her wage rate upon hiring as well as an
accurate wage statement setting forth the hours worked, rate of pay, and total hours worked each
pay period.  *See* N.Y. Lab. Law § 195(1), (3).  Plaintiff alleges that Defendants failed to furnish
her with this information.  *See* Compl. ¶ 52 ("Defendants failed to provide Plaintiff at the time of
hiring or at any point thereafter, a notice containing the rate of pay and basis thereof, whether
paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day
designated by the employer; the physical address of the employer's main office or principal place
of business; the telephone number of the employer, and anything otherwise required by law.");
Compl. ¶ 55  ("Defendants have failed to provide Plaintiff with complete and accurate wage
statements throughout her employment listing . . . all her regular and overtime hours of work, her
rate of pay, and the basis of pay.").

### a.    Liability Under the FLSA

In order to establish liability under the FLSA, a plaintiff-employee must also allege the
following facts regarding his/her relationship with an alleged employer-defendant:  "(1) the
Defendant is an enterprise participating in commerce or the production of goods for the purpose
of commerce; (2) the Plaintiff is an 'employee' within the meaning of the FLSA; and (3) the
employment relationship is not exempted from the FLSA."  *Rodriguez v. Ridge Pizza Inc.*, No.

CV 16-254, 2018 WL 1335358, at *5 (E.D.N.Y. Mar. 15, 2018) (quoting *Garcia v. Badnya*, No.

13-CV-4021, 2014 WL 4728287, at *5 (E.D.N.Y. 2014)).

***i.***      ***Defendants are "Employers"***

As to the first element, *i.e.*, whether a defendant is an enterprise engaged in commerce or

in the production of goods for commerce, the defendant is an "enterprise" where it

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or otherwise
> working on goods or materials that have been moved in or produced
> for commerce by any person; and . . . whose annual gross volume of
> sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).  Plaintiff has alleged in the Complaint that the Defendants were

directly engaged in interstate commerce, that numerous items produced outside of the State of

New York were utilized in the Bakery on a daily basis such as soap, brushes and cleaning

materials, and that Plaintiff regularly handled goods in interstate commerce such as food and

vegetables.  *See* Compl. ¶¶ 24, 29.  She has also alleged that the Defendants, "both separately

and jointly" had annual gross revenues of at least $500,000.  *Id.* ¶ 23.

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest

of an employer in relation to an employee."  29 U.S.C. § 203(d).  "Person" is defined as "an

individual, partnership, association, corporation, business trust, legal representative, or any

organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to

work."  29 U.S.C. § 203(g).  "An individual may be liable as an employer under the FLSA so

long as he exercises 'operational control' over the employee in question."  *See Acosta*, 2019 WL

1590931, at *9 (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013)).  "Individuals

who are found to be 'employers' under the FLSA may be held jointly and severally liable to the

plaintiff."  *See Acosta*, 2019 WL 1590931, at *9 (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 237

(S.D.N.Y. 2002)).  The Complaint also asserts that the Individual Defendants owned, managed,

12

and controlled the Corporate Defendants and the Bakery. *Id.* ¶¶ 2, 13.  Plaintiff claims that the Individual Defendants determined the wages and compensation of employees, established employee work schedules, and had the authority to hire and fire employees. *Id.* ¶ 13.

Here, Plaintiff has adequately alleged the elements necessary to establish that all Defendants were employers within the meaning of the FLSA. *See Acosta*, 2019 WL 1590931, at *9-10; *Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. Mar. 19, 2015) (finding a complaint which simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $ 500,000.00 in annual sales do not exclusively come from New York State").  Thus, Defendants are jointly and severally liable for damages. *See Acosta*, 2019 WL 1590931, at *10 (citing *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451, 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016), r*eport and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated sub nom.*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018); *see also Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18 CIV 126, 2019 WL 3937126, at *7 (E.D.N.Y. July 3, 2019) ("As the Court finds that Defendants Silver's Crust and Mr. McGregor were jointly Plaintiff's employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for the damages award in Plaintiff's favor recommended herein."); *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (finding allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an employer under both the FLSA and NYLL, and to impose joint and several liability on the individual and corporate defendants); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that a corporate officer who is considered an employer under the FLSA is jointly and severally liable along with the corporation).

### ii.       Plaintiff is an "Employee"

Under the FLSA, an employee is "any individual employed by an employer."  29 U.S.C.

§ 203(e)(1).  Plaintiff has shown in the Complaint that she is employed by the Defendants.  *See*

Compl. ¶¶ 3, 25, 27.  She also alleges that she performed work for Defendants such as cleaning,

cooking, serving as a cashier, and waiting tables.  *See id.* ¶¶ 3, 25; *see also Elvey*, 2019 WL

3937126, at *5 ("Plaintiff qualifies as an employee under the FLSA insofar as Plaintiff alleges in

the complaint that Defendants employed him within this statutory meaning . . . and Plaintiff

alleges specific work performed for Defendants." (internal citation omitted)); *see Acosta*, 2019

WL 1590931, at *10 (finding plaintiffs to be "employees" where the complaint alleged

defendants employed plaintiffs within that statutory meaning).

### iii.       No Exemptions Apply

"The FLSA 'contains a litany of exemptions' to qualified employees."  *See Elvey*, 2019

WL 3937126, at *6 (internal citation omitted).  Whether an employee is exempt from the

FLSA's protections is a question of law.  *See id.*; *see also Acosta*, 2019 WL 1590931, at *10.

The Court is satisfied that there are no exemptions under the FLSA in these circumstances based

on the nature of the employment relationship between Plaintiff and Defendants as well as the

nature of the actual work Plaintiff performed at the Bakery.  *See Rivera v. Harvest Bakery Inc.*,

No. 13-CV-0691, 2014 WL 3611831, at *1, 3 (E.D.N.Y. July 7, 2014) (finding bakery

employees were non-exempt because they performed non-exempt tasks, such as cooking and

cleaning).

### b.       Liability Under the NYLL

The NYLL is the state analogue to the FLSA and echoes the FLSA's overtime

compensation provisions.  *See Aguilar*, 2019 WL 2437868, at *3 (citing *Rodriguez*, 2018 WL

14

1335358, at *7).  "As a result, once liability is established under the FLSA, courts will routinely impose liability for NYLL violations."  *Id.* (citing *Guardado v. 13 Wall St., Inc.*, No. 15-CV-2482, 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), *adopted by*, 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016).  In light of the Court's determination that Plaintiff is considered an "employee" and Defendants are considered "employers" under the FLSA, they are also deemed an employee and employer subject to the NYLL.

Based on the foregoing analysis, Plaintiff has sufficiently pleaded the necessary elements of her claims under both the FLSA and NYLL.

### B.      Damages

Having determined that the Complaint establishes liability against the Defendants for failure to comply with overtime compensation requirements as well as the NYLL's time of hiring notice and wage statement requirements, the Court must next assess the damages which Plaintiff claims.  Although Rule 55 presumes all factual allegations admitted for purposes of determining liability, no such deference is given when calculating damages. *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  "Instead, damages must have an evidentiary basis such that they can be "ascertained with reasonable certainty."  *LG Capital Funding, LLC v. Worthington Energy*, No. 16-CV-6288, 2018 WL 1370266 at *4 (E.D.N.Y. Feb. 20, 2018) (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Constrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)).   A damages award may be  determined based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See Candelario*, 2020 WL 8413558, at *4 (first citing Fed. R. Civ. P. 55(b)(2); then citing *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)).

Under the FLSA, an employee is entitled to recover "the amount of their . . . unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  Significantly, the employer bears the burden of establishing that liquidated damages should not be awarded.  *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).  However, because Defendants have not answered nor responded to the instant motion, they have not carried their burden and, therefore, liquidated damages are appropriate.  *Martinez v. Alimentos Saludables Corp.*, No. 16 CV 1997, 2017 WL 5033650, at *22 (E.D.N.Y. Sept. 22, 2017) ("Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiffs; thus, the Court finds that plaintiffs are entitled to an award of liquidated damages under the FLSA.").

Here, Plaintiff seeks damages for:  (1) unpaid overtime compensation; (2) liquidated damages; (3) pre-judgment interest; (4) wage notice and wage statement violations; and (5) attorney's fees and costs.  The Court now turns to the damages to which Plaintiff is entitled.

### 1.     *Unpaid Overtime Compensation*

Overtime compensation under the FLSA is 1.5 times the employee's regular rate of pay for each hour worked over 40 hours per week.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL) (citation omitted).  "An employee's appropriate overtime rate is calculated by multiplying [the employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half."  *Rosendo v. Everbrighten Inc.*, No. 13-CV-7256, 2015 WL 1600057 at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by*, 2015 WL 4557147, (S.D.N.Y. July 27, 2015).

**a.      Reconciling Plaintiff's Hours Worked:**
**The Evidentiary Hearing**

Before proceeding to calculating damages, the Court must address the threshold issue of

how many hours Plaintiff worked per week.  In her motion for default judgment, Plaintiff seeks

to recover damages based upon an estimate that she worked 63 hours per week throughout the

entire term of her employment.  *See* Pl.'s Mem. at 11; Damages Chart [DE 14-6].  In her papers,

Plaintiff arrived at 63 hours per week by taking the average of the 54 to 72 hours she set forth in

her Complaint.  *See* Compl. ¶ 28; Pl.'s Mem. at 11.  Plaintiff's counsel included two caveats

beneath the demonstrative Damages Chart which utilized 63-hour workweeks:  (1) that the

"[n]umbers are a good faith estimate based on Plaintiff's recollection;" and (2) "[t]his damages

chart is based upon preliminary information and the expected testimony of Plaintiff and was

prepared without the benefit of Defendants' required wage and hour records under the FLSA and

NYLL."  *See* Damages Chart [DE 14-6].  Consequently, this 63-hour figure was not calculated

based upon an affidavit or sworn testimony from the Plaintiff.  Plaintiff did not include such

information/documentation in her motion papers, which, as a result, necessitated the Evidentiary

Hearing.  To resolve this issue, then, the Court has carefully examined the testimony rendered at

the Evidentiary Hearing and summarizes the pertinent testimony as follows.

When the Evidentiary Hearing began on June 22, 2021, the Court explained that the

inquest was scheduled

> because the materials that were submitted in support of the entry of
> default judgment and the information that is in the Complaint do
> not provide the Court with specific information or sufficiently
> specific information to make a determination here with respect to
> the hours worked and the wages that are being claimed here with
> respect to damages.

Transcript of the June 22, 2021 Inquest, at 3-4.[3]  Plaintiff was the only witness presented at the Hearing.  Plaintiff Avedana testified that she began working at the Bakery in June 2018 as a cook but could not recall the exact date her employment began.  Tr. 8.  At the time she was hired, she was paid $11 per hour.  *Id.*  Her hours "varied every day."  Tr. 9.  Plaintiff did not receive any type of paperwork from her employer stating how much she would be paid per hour or how many hours she was expected to work.  Tr. 20.  According to the Plaintiff, "sometimes I could work between 10 to 11 to 12 hours.  My hours varied, but I wasn't always paid the hours that I worked.  They only specifically paid us up until 11 p.m."  *Id.*  Many of Plaintiff's responses continued to be non-specific and somewhat ambiguous.

When Plaintiff began working in the restaurant in June 2018, "there was no clock-in system.  We would get asked to just write our numbers because we were simultaneously transferred from job to job.  It wasn't until a year and a half later that they had a system to clock in and clock out."  Tr. 10.  With regard to a regular shift, Plaintiff testified that her shift "always varied."  Tr. 11.  Normally, Plaintiff would arrive to open the bakery at 8 a.m. and would close around 9 or 10 at night.  *Id.*  Sales sometimes affected her shift and she would occasionally start at 11 a.m. and finish at 10 or 11 p.m.  Tr. 12.  Her hours were assigned to her by "Suzie," the owner, who would text her hours to her.  *Id.*  No schedule was posted.  Rather, for two weeks, Suzie or someone else would "text[4] us our schedules but it would always vary."  Tr. 15.

---

[3]     All citations to the hearing transcript going forward are referred to hereafter as "Tr." followed by the page number(s).  The transcript is found at DE 20.

[4]     Plaintiff's counsel stated that she had copies of some of these texts but did not bring them to the hearing.  The Court advised counsel that the record would be kept open in order for counsel to submit these texts to the Court subsequent to the hearing.  Counsel did so and these texts were posted on ECF on July 9, 2021. *See* DE 24.

With respect to the hours she worked in 2020, Plaintiff's testimony was also inconsistent. According to the Plaintiff, in 2020 her schedule changed and she was working seven days a week. Tr. 13. When asked how many hours she was working each day, Plaintiff responded that "I would – after doing the calculations I realized that I would work in a week up to 70 to 73 hours." *Id.* She then testified that when she worked seven days straight, she was working 11 hours per day. If so, that total would be 77 hours. But according to Plaintiff, she was working from 11 a.m. until 10 p.m. (11 hours per day) during weekdays and from 11 to 11 on weekends. Tr. 13-14. That calculation yields 79 hours weekly.

Plaintiff testified that she "never knew what a lunch break was working there." Tr. 14. When pressed by the Court, Plaintiff stated that she did, in fact, ask for a break but wasn't given one. *Id.* With respect to when she ate, Plaintiff responded that "when the sales would stop I would take advantage and eat what I could." *Id.* In 2019, Plaintiff's hourly rate was $12 per hour which was raised to $13 per hour in 2020. Plaintiff confirmed that she was paid every week throughout her employment period. Tr. 16. In 2018, regardless of the number of hours she worked, Plaintiff testified that she received the same pay, namely, $11 per hour for 40 hours of work, for a total of $440. Tr. 18-19. For the entire length of her employment, Plaintiff received an envelope from Suzie each week with cash in it and nothing else -- no statement of hours worked or rate of pay – nothing in writing.[5] Tr. 17. She never received any additional payment for the extra hours that she was working. Tr. 19. No taxes were withheld from her cash wages. Tr. 17. Nor did Defendants provide Plaintiffs their tips. *Id.*

---

[5]     Plaintiff's counsel pointed out to the Court that when referencing the "bakery," Plaintiff is actually talking about a place that has two different services – a bakery and a restaurant. Tr. 17-18. Plaintiff worked at both which is why two corporations are listed as Defendants here.

19

It was not until 2020 that Plaintiff brought up the issue with management that she was working more than 40 hours a week.  Tr. 18.  At that time, she was no longer being paid by the hour.  Plaintiff testified that "I was just given $100 for a day's work."  *Id.*  According to Plaintiff, "[d]ue to the pandemic, we were told that because there were not a lot of sales we weren't going to be able to get paid on an hour basis and instead of a daily basis."  Tr. 19.  This change took place when the pandemic started, around March 2020.  Tr. 20.  As a result, Plaintiff was then making less than what she had been making when she was paid hourly.  *Id.*  Plaintiff added that she never saw any signs hanging up in the bakery or the restaurant about minimum wages or hourly wages.  *Id.*

During the pandemic in 2020, Plaintiff testified that she was working as a cashier and a clerk and when she received her envelope from Suzie, she realized that even though she was working 11 hours a day, she was only getting paid $600 to $700.  When Suzie gave Plaintiff her envelope, she would tell Plaintiff that "she could not pay me by the hour anymore and I was going to get paid on a basis of the days that I worked."  Tr. 21.  The last day Plaintiff worked for the Defendants was May 16, 2020.  *Id.*

Since no schedule was ever posted, Plaintiff testified that Suzie would send her a text "at around 1 or 2 in the morning" telling her when to come in the next day.  Tr. 15.  Plaintiff kept some of those texts and testified that she had given them to her attorney.  Plaintiff's counsel confirmed that she had the texts and said she would provide them to the Court, which the Court directed her to do expeditiously after the hearing.  *Id.*

The Court brought to Attorney Stillman's attention the fact that the Complaint and motion papers inconsistently labeled the types of corporations which the Corporate Defendants

20

are.  Tr. 22-23.  Counsel was permitted to file a request to amend the caption[6] to properly reflect the identities of the Corporate Defendants.  Tr. 23.

The Evidentiary Hearing did not alleviate all of the Court's concerns regarding the accuracy of the figures stated above.  Plaintiff's testimony indicated that she did not work a set schedule and often received notice of her hours via text message by Defendant Agurcia at 1 or 2 a.m. the day Plaintiff was supposed to go to work.  Although Plaintiff mentioned on numerous occasions that she did not work a set schedule, she apparently did in 2020 while she was working seven (7) days a week.  She specifically stated that she worked from 11 a.m. to 10 p.m. on weekdays and 11 a.m. to 11 p.m. on weekends.  However, those statements are inconsistent with Plaintiff's other testimony regarding 2020 because she also stated that (a) she worked between 70 and 73 hours per week and (b) she worked 11 hours per day.  As a result, the Court was given three conflicting figures for the hours Plaintiff worked per week in 2020.  If Plaintiff worked 11 a.m. to 10 p.m. during the week and from 11 a.m. to 11 p.m. on weekends, she worked 79 hours per week; if Plaintiff worked 70 to 73 hours per week, she worked 71.5 hours each week on average; and if Plaintiff worked 11 hours per day, she worked 77 hours per week.  These three figures, when averaged, yield a 75.8-hour workweek for 2020 which exceeds the high-end of the range alleged in the Complaint.

Moreover, in contrast to the Complaint, Plaintiff testified that she was not exclusively paid a $13 hourly rate in 2020.  In view of the contradiction between Plaintiff's allegations in the

---

[6]    Plaintiff's counsel did file a letter request to change the caption from "Casa Ofelia's Bakery" and "Casa Ofelia's Corp." to "Casa Ofelia's Bakery LLC" and "Casa Ofelia Corp."  *See* DE 25.  In support of this request, Plaintiff submitted corporate filings for both entities from the New York Secretary of State, which provided the names of "Casa Ofelia's Bakery LLC" and "Casa Ofelia's Corp."  *See* DE 26.  The caption in its current form identifies the Corporate Defendants in that manner, except that "Casa Ofelia's Corp." is followed by "d/b/a Casa Ofelia Bakery."  As such, the Court finds Plaintiff's request moot.

Complaint and her sworn testimony at the hearing, the Court is required to accept Plaintiff's sworn testimony. *See Medina v. Angrignon*, 15-CV-427-A, 2021 WL 1817046, at *7 (W.D.N.Y. May 6, 2021) (citing *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002) ("Faced with [a] confounding contradiction [between plaintiff's allegations in her complaint and her sworn testimony], the Court has no basis for accepting as true the vague statements in [the] [c]omplaint as opposed to [plaintiff's] sworn testimony...."); *Taylor v. Ridley*, 904 F. Supp. 2d 222, 233 (E.D.N.Y. 2012) (finding that where faced with deposition and trial testimony which contradicts a plaintiff's verified complaint, the court must accept plaintiff's sworn testimony). In questioning by the Court, Plaintiff stated that she was paid $100 per day from March 2020 through the conclusion of her employment. Then, with regard to Plaintiff's hours for 2018 and 2019, that time is also not readily discernible based upon Plaintiff's testimony. She worked six days per week during those years and testified to five different daily schedules: 9 a.m. to 9 p.m., 11 a.m. to 10 p.m., 11 a.m. to 11 p.m., 8 a.m. to 9 p.m., and 8 a.m. to 10 p.m. Taking the average of these five different schedules, Plaintiff worked on average 12.4 hours per day or 74.4 hours per week.

Following the Hearing, the Court had the opportunity to review the text messages between Plaintiff and Defendant Agurcia which were submitted by counsel. *See* Text Messages [DE 23 at 5-7]; Text Message Translations [DE 24]. These text messages are comprised of four conversations between Plaintiff and Defendant Agurcia, which took place over the course of four days. Only one of these conversations pertains to the hours Plaintiff was working. The text indicates Plaintiff started at 9 a.m. on an unspecified date. The other conversations, which took place on April 13, 2020, May 13, 2020, and May 14, 2020, show that Plaintiff was told not to go to work on two of those days, and that Plaintiff asked for a day off on the other. As such, the

text messages are not particularly helpful to the Court for purposes of determining how many hours Plaintiff worked.  Moreover, the text messages undermine Plaintiff's testimony that she worked seven days per week in 2020.

Together with the text messages, Attorney Stillman also submitted two of Plaintiff's time cards.  *See* Time Cards [DE 23 at 1, 4].  Neither of them are dated; however, Plaintiff previously testified that the Bakery did not implement a punch-in/punch-out system until a year and a half after she started working there.  Therefore, the Court can infer that these time cards pertain to weeks worked at some point in the second half of 2019 and/or 2020.  The first time card shows Plaintiff worked seven days and approximately 70 hours that particular week.  *See id.* at 1.  The second time card shows a six-day workweek for an approximate total of 66 hours.  *Id.* at 4.  The Court also notes that despite being in possession of these time cards, Plaintiff's counsel did not utilize them in her damages calculation for the instant motion.

For these reasons, Plaintiff's position "cannot be squared with the Court's role in assuring that plaintiff has proven [her] damages to a 'reasonable certainty.'"  *See Chowdhury v. Hamza Exp. Food Corp.*, No. 14-CV-150, 2015 WL 5541767, at *4 (E.D.N.Y. Aug. 21, 2015) (quoting *Llolla v. Karen Gardens Apartment Corp.*, No. 12–CV–1356, 2014 WL 1310311, at *7 (E.D.N.Y. Mar.10, 2014)).  Although the Court acknowledges that Plaintiff's schedule varied, Plaintiff's testimony was internally inconsistent regarding the hours worked and significantly different from the allegations in the Complaint.  The Court finds the sample time cards submitted after the Hearing to be a more accurate representations of Plaintiff's hours as opposed to her testimony which appears to be inflated.  Accordingly, in light of the fact that Plaintiff testified to working similar 6-day weeks in 2018 and 2019, the Court will utilize the time card which sets forth a 6 day, 66-hour workweek as an accurate representation of her weekly hours during those

years for purposes of determining the overtime compensation she should receive.  Similarly, the
Court will utilize the time card which sets forth a 7-day, 70-hour workweek to calculate
Plaintiff's overtime compensation for 2020.  *See Chuchuca v. Creative Customs Cabinets Inc.,*
No. 13-CV-2506, 2014 WL 6674583, at *12 (E.D.N.Y. Nov. 25, 2014) ("The Court rejects
counsel's decision to proceed with the motion for default judgment using this estimate, rather
than one extrapolated from the actual time records-the Hours Spreadsheet and the Time Cards-
which are more reliable indicia of the hours worked by plaintiff.").  The Court also observes that
the total hours reflected on the time cards fall within the range of hours Plaintiff worked each
week as calculated by Plaintiff's counsel (63 hours) and the average weekly hours the Court was
able to extrapolate from Plaintiff's testimony (74.4 hours in 2018 and 2019; 75.8 hours in 2020).

**b.    Calculation of Wages Owed**

Based upon the Court's findings regarding the number of hours Plaintiff worked each
week, the Chart below reflects the Court's recommendation that Plaintiff receive **$42,823** for
unpaid overtime compensation.  The Court utilized the applicable NYLL minimum wage rate to
determine the overtime premium owed to plaintiff.  *See Lu Nan Fan v. Jenny & Richard's Inc.*,
No. 17-CV-6963, 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019), *report and
recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); *see also Calle v. Yoneles
Enters., Inc.*, 16-CV-1008, 2017 WL 6942652, at *14 & n.17 (E.D.N.Y. Oct. 24, 2017) (stating a
plaintiff may recover under the statute that provides the highest measure of damages).  Thus, the
basis of the Court's calculation is as follows:

| Pay Period | Weeks Worked | OT Hours Per Week | Wage Rate Paid | Minimum Wage Rate | OT Rate | Unpaid OT Per Week | Total Unpaid OT |
|---|---|---|---|---|---|---|---|
| 6/25/2018 – 12/31/2018 | 27 | 26 | $11 | $11 | $16.50 | $429 | $11,583 |
| 1/1/2019 – 12/31/2019 | 43 [7] | 26 | $12 | $12 | $18.00 | $468 | $20,124 |
| 1/1/2020 – 2/29/2020 | 8 | 30 | $13 | $13 | $19.50 | $585 | $ 4,680 |
| 3/1/2020 – 5/16/2020 | 11 | 30 | $10[8] | $13 | $19.50 | $585 | $ 6,435 |
| | | | | | | **TOTAL:** | **$42,823** |

### 2. *Liquidated Damages*

Plaintiff requests that she be awarded liquidated damages under both the FLSA and the

NYLL. *See* Pl.'s Mem. at 12; Stillman Decl. ¶ 16(c). Both statutes permit a liquidated damages

award which equates to 100% of the wages owed. *See Candelario*, 2020 WL 8413558, at *7

(first citing 29 U.S.C. § 216(b); then citing N.Y. Lab. L. § 663(1)). The FLSA affords courts

discretion to decline to award liquidated damages where employers demonstrate that they acted

in good faith and did not reasonably believe they violated the FLSA. *Id.* (citing 29 U.S.C.

§ 260). The NYLL affords Court similar discretion. *See* N.Y. Lab. L. § 663(1).

Although Plaintiff seeks liquidated damages arising under both the FLSA and NYLL, the

Second Circuit has interpreted these statutes to "not allow[] duplicative liquidated damages for

the same course of conduct" based upon the disfavored principle of double recovery. *Rana v.*

---

[7]     The calculation of Plaintiff's unpaid overtime compensation for 2019 excludes March and April because the Plaintiff did not work during those months.

[8]     Plaintiff's hourly rate for the period of March 1, 2020 to May 16, 2020 was calculated by dividing her daily rate of pay, $100, by the average number of hours she worked those weeks, 10 hours.

*Islam*, 887 F.3d 118, 123 (2d Cir. 2018); *see also Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020); *Candelario*, 2020 WL 8413558, at *7; Rodriguez, 784 F. Supp. 2d at 127 n.5 (collecting cases).  In light of their default, Defendants they have failed to demonstrate any good faith that their payment of Plaintiff's overtime compensation was compliant with the law.  *See Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963, 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).  Therefore, Plaintiff is entitled to 100% of her damages for overtime wages.  *See Candelario*, 2020 WL 8413558, at *7.  Accordingly, the Court respectively recommends to Judge Gujarati that Plaintiff be awarded **$42,823** in liquidated damages.

### 3.     *Pre-Judgment Interest*

The NYLL provides for pre-judgment interest at the rate of 9% per annum in addition to liquidated damages.  *See Candelario*, 2020 WL 8413558, at *8 (citing N.Y. Lab. L. § 198(1-a)).  "Under New York law, when damages 'were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.'"  *Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18 CV 04761, 2019 WL 4889591, at *10 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019).  Pre-judgment interest continues to accrue through the date judgment is entered.

Plaintiff seeks pre-judgment interest beginning "from the midpoint date of the period through the current date for the entire period."  *See* Pl.'s Mem. at 15.  Although Plaintiff does not specify the dates, it appears that Plaintiff seeks to utilize the midpoint date of her employment as the baseline for this calculation.  Plaintiff began working for Defendants on June 25, 2018 and

26

her employment ended on May 16, 2020.  Accordingly, the intermediate date in Plaintiff's employment is approximately June 6, 2019.  Courts have discretion in determining a reasonable date from which to award pre-judgment interest and the Court finds June 6, 2019 to be a reasonable intermediate date for purposes of calculating pre-judgment interest.  *See Candelario*, 2020 WL 8413558, at *8.   As such, it is respectfully recommended that Plaintiff be awarded pre-judgment interest on $42,823, running from June 6, 2019 until the entry of judgment at the rate of 9% per annum to be calculated by the Clerk of the Court.  *See Espinoza v. Indus. Glass & Mirror Inc.*, No. 16 CV 0064, 2016 WL 7650592, at *7 (E.D.N.Y. Nov. 30, 2016), *report and recommendation adopted*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017).

### 4.   *Wage Notice and Statement Violations*

Pursuant to the NYLL, employees may recover $50.00 for each workday in which their employers fail to provide a wage notice, up to a $5,000.00 maximum, and $250.00 for each workday in which his employer fails to provide a wage statement, up to a $5,000.00 maximum. *See Osorio v. Taste of Thai, Inc.*, No. 17-CV-5664, 2018 WL 8059564 at *5 (E.D.N.Y. Sep. 12, 2018) (quoting N.Y Lab. L. § 198(1-b) & (1-d)), *adopted by*, 2019 WL 1795954 (E.D.N.Y. Mar. 29, 2019).

Here, Plaintiff requests the maximum statutory damages of $10,000 for Defendants' violations of the NYLL's wage notice and statement provisions.  *See* Pl.'s Mem. at 14.  Plaintiff testified that she never received a written wage notice or a wage statement throughout her entire employment, a period which exceeds 100 days.  *See* Tr. 16-17, 20.  Accordingly, the Court recommends that Plaintiff be awarded the requested maximum statutory damages of $5,000 under N.Y. Lab. Law § 195(a) for the wage notice violations and $5,000 under N.Y. Lab. Law § 195(3) for the wage statement violations, for a total of **$10,000**.  *See Baizan Guerrero v. 79th*

*St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *10 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *Candelario*, 2020 WL 8413558, at *7.

### D. Attorney's Fees and Costs

Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorney's fees and costs. *See Jermine v. Dennis*, 901 F. Supp. 2d 365, 391 (E.D.N.Y. 2012) (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1)). Plaintiff here seeks an award of attorney's fees and costs in the amount of $5,053.00. *See* Pl.'s Mem. at 14.

### 1. *The Lodestar Analysis*

The Court has discretion to determine the amount of attorneys' fees appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In adjudicating a motion for attorneys' fees, both the Second Circuit and the Supreme Court have held that "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)). The Court should determine the "presumptively reasonable fee" by looking to "what a reasonable paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 183-84.

### a. Reasonable Hourly Rate

In determining reasonable hourly rates, the Court considers this Circuit's adherence to the "forum rule," which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *see also Joseph v.*

28

*HDMJ Restaurant, Inc.*, No. 09 Civ. 240, 2013 WL 4811225, at \*19 (E.D.N.Y. Sept. 9, 2013) (internal citations omitted); *Pinzon v. Paul Lent Mechanical Sys.*, No. 11 Civ. 3384, 2012 WL 4174725, at \*5 (Aug. 21, 2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). "Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312, 2018 WL 2766139, at \*7 (E.D.N.Y. June 8, 2018), *aff'd*, 790 Fed. App'x 289 (2d Cir. 2019); *see Isakova v. Klein, Daday, Aretos & O'Donoghue LLC*, 19-CV-5221, 2021 WL 2382465, at \*3 (E.D.N.Y. June 10, 2021); *Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at \*3 (E.D.N.Y. Aug. 5, 2016); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09 Civ. 5251, 2014 WL 1514235, at \*14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).

"Some judges 'have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'" *Safeco Ins. Co. of Am.*, 2018 WL 2766139, at \*7 (internal quotation marks omitted) (quoting *Small v. New York City Transit Auth.*, No. 09 Civ. 2139, 2014 WL 1236619, at \*5 (E.D.N.Y. Mar. 25, 2014)); *Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on the Piers, LLC*, No. 18-CV-3642, 2019 WL 440641, at \*5 (E.D.N.Y. Jan. 14, 2019) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners . . . ."), *report and recommendation adopted sub nom. Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on Piers, LLC*, No. 18-CV-3642, 2019 WL 438476 (E.D.N.Y. Feb. 4, 2019); *Eichenblatt v. Kugel*, No. 17 CV 559, 2018 WL 3202079, at \*10 (E.D.N.Y. May 15, 2018) ("Prevailing hourly rates for attorneys in the Eastern District of New York typically range "from $300 to $450 for partners [and] $200 to $300 for senior associates.").

Although the Second Circuit has not recently revisited the issue of what constitutes a

reasonable fee within this district since its discussion in *Konits v. Karahalis*, 409 Fed. App'x

418, 422-23 (2d Cir. 2011) (summary order), which affirmed a district court decision holding

that the prevailing rates for experienced attorneys in the Eastern District of New York range

from approximately $300 to $400 per hour, a number of district courts within this district

continue to rely, in part, on *Konits* in determining the appropriate range of fees.  *See Morales v.*

*B&M Gen. Renovation Inc.*, No. 14 CV 7290, 2016 WL 1266624, at *11 (E.D.N.Y. Mar. 9,

2016) (relying, in part, on *Konits* and finding that "the prevailing hourly rate for partners in this

district is between $300 and $400"), *report and recommendation adopted*, 2016 WL 1258482

(E.D.N.Y. Mar. 29, 2016); *Incredible Foods Grp., LLC*, 2016 WL 4179943, at *3 (same);

*Valdez*, 2016 WL 3079028, at *8 (same); *Litkofsky v. P & L Acquisitions, LLC*, No. CV 15 5429,

2016 WL 7167955, at *9 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub*

*nom. Ira Litkofsky v. P & L Acquisitions LLS*, No. CV 15-5429, 2016 WL 7168069 (E.D.N.Y.

Dec. 8, 2016) (same).

With the forum rule as a guide, courts also "take into account case-specific factors to help

determine the reasonableness of the hourly rates and the number of hours expended."  *Pinzon*,

2012 WL 4174725, at *5; *United States v. City of New York*, No. 07-CV-2067, 2013 WL

5542459, at *6 (E.D.N.Y. Aug. 30, 2013) ("In addition to the prevailing market rates, the court

must also consider case-specific factors.").  These factors include:

> [T]he complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively (taking account of the
> resources being marshaled on the other side but not endorsing
> scorched earth tactics), the timing demands of the case, whether an
> attorney might have an interest (independent of that of his client) in
> achieving the ends of the litigation or might initiate the
> representation himself, whether an attorney might have initially

30

acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *see Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017).  Additionally, courts should consider:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[9]

---

[9]     These are the 12 factors initially set out by the Fifth Circuit in *Johnson v. Georgia Highway Express. Inc*., 488 F.2d 714 (5th Cir. 1974).  While the Second Circuit in *Arbor Hill* stated that "in determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors," 522 F.3d at 190, "[t]he Supreme Court recently approved the lodestar approach over the more discretionary approach that had been adopted by the 5th Circuit in [*Johnson*]."  *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 506 (S.D.N.Y. 2012) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).  Yet the 12 *Johnson* factors appear to remain part of a comprehensive approach to determining the rate a reasonable client would be willing to pay.  *See, e.g.*, *New York City Dist. Council of Carpenters*, No. 16-CV-3429, 2018 WL 3768586, at *2 (E.D.N.Y. July 23, 2018), *report and recommendation adopted sub nom. Trustees of New York City Dist. Council of Carpenters Welfare Fund v. Best Made Floors, Inc.*, No. 16-CV-3429, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018); *Gutierrez v. Taxi Club Management, Inc.*, 17 Civ. 532, 2018 WL 3432786, at *13 (E.D.N.Y. June 25, 2018), *report and recommendation adopted sub nom. Gutierrez v. Taxi Club Mgmt., Inc*., No. 17-CV-0532, 2018 WL 3429903 (E.D.N.Y. July 16, 2018); *Finkel v. Rico Elec., Inc.*, No. 11-CV-4232, 2012 WL 6569779, at *13 (E.D.N.Y. Oct. 1, 2012), *report and recommendation adopted*, No. 11-CV-4232, 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2012).

*Gomez v. Midwood Lumber & Millwork, Inc.*, No. 17-CV-3064, 2018 WL 3019877, at *4

(E.D.N.Y. June 17, 2018) (citing *Bogosian v. All Am. Concessions,* No. 06-CV 1633, 2012 WL

1821406, at *2 (E.D.N.Y. May 18, 2012)); *Arbor Hill*, 522 F.3d at 190. "The party seeking

reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours

spent and rates charged." *Isakova*, 2021 WL 2382465, at *2; *Finkel v. Omega Comm'n Svcs.,*

*Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded*

*Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983); *see Trustees of the Building Trades Educ.*

*Benefit Fund v. Culver Elec., LLC*, 17-CV-03448, 2021 WL 1911122 at *4 (E.D.N.Y. Apr. 19,

2021), *report and recommendation adopted*, 2021 WL 1906486 (E.D.N.Y. May 12, 2021);

*Isakova*, 2021 WL 2382465, at *2.

### b.     Reasonableness of Hours Billed

To determine whether the number of hours spent by counsel on a given task was

reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the

practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Isakova*,

2021 WL 2382465, at *3; *Parsons v. Bong Mines Enter. LLC*, CV 19-0813, 2021 WL 931506, at

*12 (E.D.N.Y. Feb. 18, 2021), *report and recommendation adopted*, 2021 WL 930259

(E.D.N.Y. Mar. 11, 2021); *Fox Indus., Inc. v. Gurovich*, No. 03 Civ. 5166, 2005 WL 2305002, at

*2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A

court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the

litigation." *Cho v. Koam Medical Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007)

(quoting *Hensley*, 461 U.S. at 434); *Barbu v. Life Ins. Co. of N. Am.*, No. 12-CV-1629, 2015 WL

778325, at *4 (E.D.N.Y. Feb. 24, 2015).

Likewise, where counsel relies on vague or excessive entries or block billing practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted. *Anderson v. Cty. of Suffolk*, No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); *see Barbu*, 2015 WL 778325, at *5 (imposing a 33% reduction in total hours based upon vague entries and block billing); *Caban v. Employee Sec. Fund of the Elec. Products Indus. Pension Plan*, No. 10–CV–389, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (imposing a 33% reduction in overall hours spent due to block billing, vague entries, and excessive time spent on certain routine tasks).

Further, where counsel seeks compensation for time spent completing administrative tasks or work that should have been accomplished by a less-skilled practitioner, "[u]niform percentage cutbacks are warranted." *De La Paz v. Rubin & Rothman, LLC*, No. 11 Civ. 9625, 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013); *see Chavez*, 2016 WL 1171586, at *5 (reducing total hours by 30% since "much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate" and because "some of the work appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel"); *Barshay v. Specified Credit Assocs. I, Inc.*, No. CV 15-1044, 2016 WL 3578993, at *3 (E.D.N.Y. June 3, 2016) (reducing total hours claimed in FDCPA action by 20% in light of the duplicative nature of the work, the fact that many of the tasks could have been accomplished by "a less experienced associate," and based upon the overall lack of care taken in preparation of materials submitted to the court), *report and recommendation adopted sub nom. Barshay v. Specified Credit Assocs. 1, Inc.*, No. 15-CV-1044, 2016 WL 3582058 (E.D.N.Y. June 28, 2016).

33

### 2.     Costs

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014).  However, it is incumbent upon the party seeking reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid. *See Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("[I]t is . . . the requesting party's burden to support its application, and this means that the requested costs must be substantiated . . . .  A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation."); *Volpe v. Nassau Cty.*, No. 12 CV 2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested.") (internal quotation omitted).  In addition, Local Civil Rule 54.1 states that "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *Id.* (quoting *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458, 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012), *report & recommendation adopted sub nom.*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012)).

Generally, the only exception to this rule is where reimbursement is sought for a filing fee.  In such cases, a court may take judicial notice of the fact that the fee was paid by virtue of entries in the docket. *See Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352

34

(E.D.N.Y. 2014), *judgment entered sub nom.*, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) ("The Court takes judicial notice of the $350 filing fee reflected on the docket."); *Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("Court fees that are reflected on the Court's docket are sufficiently substantiated").

### 3.    *Application to the Facts*

#### a.    **Hourly Rate of Plaintiff's Counsel**

In her declaration, Plaintiff's counsel states that her work was billed "at the rate of $350 per hour, which is [her] standard billing rate for matters paid on an hourly basis."  *See* Stillman Decl. ¶ 16(j).  This statement is at odds with the billing records themselves.  The amount listed for each task counsel performed was calculated by utilizing an hourly rate of $450.  *See* Billing Records at 1.  Counsel states that she performed 15.10 hours of work.  The total fee reflected at the end of her invoice is $5,053.00.  When divided by 15.10 hours, that number does not equate to an hourly rate of $350 -- but rather to an even lower amount, namely, $334.64.  As such, the discrepancies in Attorney Stillman's Declaration and the Billing Records have made it difficult to reconcile the hourly rate requested here.

Attorney Stillman is the Managing Member of Lina Stillman Law, P.C. and has been practicing law since 2012.  *See* Stillman Decl. ¶ 16(j).  She graduated from Rutgers University School of Law in 2010 and after graduation worked at two different law firms exclusively practicing labor and employment law, specifically, wage and hour litigation.  *Id.*  Attorney Stillman has also taught Fourth Amendment Law as an adjunct professor at the Borough of Manhattan Community College since 2015.  *Id.*

"Although solo practitioners rarely command the fees of partners in law firms, 'courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as

a solo practitioner.'" *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d, 281, 299 (E.D.N.Y. 2013) (quoting *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 143 n.6 (2d Cir.2007)); *see also Saldana v. New Start Grp., Inc.*, No. 14-CV-4049, 2016 WL 3683530, at *3 (E.D.N.Y. July 6, 2016) ("Although the attorneys in this case are solo practitioners, rather than partners or associates at a law firm, the Second Circuit has cautioned district courts against 'treat[ing] an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate,' and has instead urged the courts to compare solo practitioners to attorneys of comparable skill, expertise, and reputation."  (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006))).

      Courts in this District have awarded solo practitioners hourly rates ranging from $300 to $400.  *See Raja v Burns,* 19 CV 1328,  2021 WL 1394638, at *4 (E.D.N.Y. Feb. 2, 2021), *report and recommendation adopted,* 19 CV 1328, 2021 WL 1099931 (E.D.N.Y. Mar. 23, 2021) (reducing hourly rate based on finding that requested rate was unreasonable given the lack of complexity of the case and counsel's status as a solo practitioner); *Meide Zhang v. Liang Zhang*, 16 CIV 4013, 2020 WL 9256464, at *11 (S.D.N.Y. Dec. 21, 2020], *report and recommendation adopted as mod sub nom. Zhang v Zhang*, 16 CIV. 4013, 2021 WL 1154084 (S.D.N.Y. Mar. 26, 2021) (reducing hourly rate for attorney practicing 17 years from $350 to $285 balanced against his position at a small firm and attorney's relatively minimal role in the case); *Struthers v. City of New York*, No. 12-CV-242, 2013 WL 5407221, at *7 (E.D.N.Y. Sept. 25, 2013) (reducing rate for solo practitioner with 13 years of experience from $400 to $350); *see also Colon v. City of New York*, Nos. 09-cv-0008, 09-cv-0009, 2012 WL 691544, at *20–21 (E.D.N.Y. Feb. 9, 2012) (approving rate of $350 per hour for "seasoned" solo practitioners with over 20 years of

litigation experience); *Brown v. Starrett City Associates*, No. 09-cv-3282, 2011 WL 5118438, at *5 (approving rate of $300 per hour for solo practitioner with 12 years of experience, including 7 years concentrating on civil rights litigation); *Wong v. Yoo*, No. 04–cv–4569, 2010 WL 4137532, at *2 (E.D.N.Y. Oct. 19, 2010) (reducing rate of solo practitioner with over thirty years of experience with a primary focus on civil rights cases from $400 to $375); *Luca v. County of Nassau*, 698 F.Supp.2d 296, 301-02 (E.D.N.Y.2010) (approving rate of $400 per hour for solo practitioner with over twenty years of experience with a primary focus on civil rights cases).

Based upon Attorney Stillman's qualifications, her billing rate of $450 exceeds the high-end of the generally accepted range for senior attorneys in this district, including solo practitioners, and is unreasonable. *See Saldana*, 2016 WL 3683530, at *3 (reducing rate of solo practitioner with seven years of experience in labor law and commercial litigation from $350 to $300; finding $400 rate reasonable for solo practitioner with 20 years of experience and 13 years in labor and employment law). As such, the Court finds a reduction of Attorney Stillman's hourly rate to $340 to be reasonable.

The Court also notes that Plaintiff's counsel's May 16, 2020 billing entry is for paralegal work; however, that time expenditure was billed at Attorney Stillman's $450 hourly rate. *See* Billing Records at 1. Attorney Stillman stated on the record at the Evidentiary Hearing that the rate for that entry should instead be $75 per hour. *See* Tr. at 23-24.

### b.    Hours Billed by Plaintiff's Counsel

Plaintiff's counsel expended 15.10 hours on this matter. *See* Billing Records at 1. The tasks reflected in the billing records only encompass fees for work completed through the filing of Plaintiff's motion for default -- prior to the Evidentiary Hearing and supplemental

submissions made thereafter.  As such, the Court finds Plaintiff's requested hours to be reasonable.

Applying the reduced hourly rates to the number of hours reflected in Attorney Stillman's billing records, the following Chart reflects the Court's recommendation of a **$4,816.00** fee award:

| Hours Expended | Recommended Rate | Recommended Fee |
| :---: | :---: | :---: |
| 13.9 | $340 | $4,726.00 |
| 1.2 | $75 | $90.00 |
|  | **TOTAL:** | **$4,816.00** |

### c.   Costs

Plaintiff seeks to recover the following costs:  (1) $400 for the filing fee; (2) $75 process server fee; and (3) a second $75 process server fee.  *See* Billing Records at 2.  The Court takes judicial notice, as it is permitted to do, of Plaintiff's payment of the $400 filing fee as reflected on the docket and finds that cost to be substantiated.  Plaintiff did not include in her initial submission any receipts or invoices for the process server fees and was directed to file such documentation after the Evidentiary Hearing.  Plaintiff complied with this directive and submitted an invoice from PM Legal in the amount of $150 for a service of process charge.  *See* PM Legal Invoice [DE 21].  Despite the fact this total amount is billed as a singular charge instead of two separate charges as reflected in Plaintiff's counsel's invoice, the amounts requested are the same and the Court likewise finds this cost to be substantiated.

Accordingly, the Court respectfully recommends to Judge Gujarati that Plaintiff be awarded costs in the amount of **$550.00**.

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Gujarati that Plaintiff's motion for default judgment be GRANTED, in part, and that Plaintiff be awarded the following damages:  (1) **$42,823** in unpaid overtime compensation; (2) **$42,823** in liquidated damages; (3) pre-judgment interest on $42,823, running from June 6, 2019 until the entry of judgment at the rate of 9% per annum to be calculated by the Clerk of the Court; (4) **$10,000** for wage and notice violations; (5) **$4,816.00** in attorney's fees; and (6) **$550.00** in costs.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Diane Gujarati.  Any requests for an extension of time for filing objections must be directed to Judge Gujarati prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
           August 19, 2021

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge